# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LEO LLOYD | CRIMINAL ACTION<br><br>No. 07-195 |

Pollak, J.  June 7, 2010

## OPINION

Defendant Leo Lloyd pled guilty to one count of possessing a firearm in violation of 18 U.S.C. § 922(g)(1),[1] and this court sentenced him to 110 months in prison and three years of supervised release. Lloyd now timely moves to vacate, correct, or set aside that sentence pursuant to 28 U.S.C. § 2255. Lloyd argues that he is entitled to relief for three reasons: (1) the imposition of a sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6),[2] which defendant argues violated the Supreme Court's decisions in

---

[1] 18 U.S.C. § 922(g)(1) makes it "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

[2] The version of § 2K2.1(b)(6) effective at the time of Lloyd's sentencing on February 20, 2008, provided an offense level increase of four levels "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason

1

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Booker*, 543 U.S. 220 (2005); (2) the fact that at defendant's sentencing hearing, a police detective "testified as to what was told to him by witnesses," which Lloyd asserts amounts to a violation of the Confrontation Clause, Mot. at 11; and (3) the ineffective assistance of Lloyd's counsel, who, defendant argues, "failed to properly investigate [his] Criminal History and failed to calculate the adverse [e]ffect this history may have in Plea Negotiations and Sentencing," "failed to diligently" challenge a sentencing enhancement under U.S.S.G. § 2K2.1(b)(5), and failed to appeal Lloyd's sentence, *id.* at 6. The government opposes the motion, arguing both that Lloyd waived his right to bring a collateral challenge and that his arguments fail on the merits.

When a defendant signs a plea agreement that includes a waiver of his rights to challenge a conviction and judgment of sentence on appeal or via collateral proceedings, a two-step analysis applies. "The threshold issue . . . is whether the waiver . . . was knowing and voluntary." *United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008). The second step of the analysis considers whether enforcing the waiver "would work a miscarriage of justice." *Id.* While "a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary," this "court has an independent obligation to conduct an evaluation of the validity of [the] waiver." *Id.* at 237-38. Thus, although Lloyd does not mention the waiver in his § 2255 motion, I will

---

to believe that it would be used or possessed in connection with another felony offense."

undertake to determine whether his waiver of his collateral challenge rights was knowing and voluntary and whether enforcing that waiver would amount to a miscarriage of justice.

Before embarking on this analysis, however, I consider the scope of the waiver. Lloyd's plea agreement includes a provision providing that he "voluntarily and expressly waives all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1292, 28 U.S.C. § 2255, or any other provision of law." Gov't Ex. A, at 4. This broad language covers Lloyd's § 2255 motion. The agreement does then set out limited exceptions to this waiver, allowing Lloyd to file a direct appeal if (1) "the government appeals from the sentence," (2) his "sentence on any count . . . exceeds the statutory maximum for that count" (stated elsewhere in the agreement to be ten years in prison), (3) "the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines," or (4) "the sentencing judge . . . imposed an unreasonable sentence above the final Sentencing Guidelines range." *Id.* at 5. "Th[e] waiver" was also "not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived." *Id.* at 4. Because this is not a direct appeal, and because the exception for non-waivable claims does not apply to Lloyd's claims absent a miscarriage of justice, I turn to the *Mabry* analysis.

As to whether his waiver was knowing and voluntary, Lloyd, at his change-of-plea

hearing, indicated in response to my questions that he understood (1) the crime with which he was charged,[3] (2) the fact that his sentence could be as long as ten years in prison,[4] and (3) the constitutional rights surrounding the trial and appeal process that he would forgo by entering a guilty plea.[5] I then specifically noted the waiver provisions in

---

[3]     THE COURT: So, the basic crime that you are charged with, and you tell me if you don't understand this, the basic crime you are charged with is being a person who was in possession of a gun, and that is unlawful if you have previously yourself been convicted of some other crime, a crime of whatever kind for which you could have been punished by being in prison for a year. Do you understand that?

THE DEFENDANT: Yes.
Gov't Ex. B, at 9.

[4]     THE COURT: Now, the crime is one, Mr. Lloyd, which if you plead guilty or if you were to go to trial and were convicted guilty by a jury, but if you plead guilty which Mr. Genovese says is your present expectation, you can be punished, and I don't say this is a probable sentence, but under the law of Congress which defines this crime, you can be sentenced to a term of imprisonment of as long as ten years, and you should understand that.

That is, I have the authority to impose a sentence as long as that. It's not at all likely that I would impose any such long punishment, but I want you to understand that that is within the realm of possibility. Do you understand that?

THE DEFENDANT: Yes.
Gov't Ex. B, at 10.

[5]     THE COURT: So, I want you to be sure that you understand those rights –

THE DEFENDANT: Yes.

THE COURT: – that you would have if you do not plead guilty. If you continue to plead not guilty, then there would be trial under those circumstances.

And, particularly, I want to be sure that you understand if a jury decides in your favor, the government has no appeal to the Court of Appeals from such a decision.

the plea agreement, including the fact that those provisions included a waiver of collateral challenges.[6] Defendant acknowledged that he understood the provisions of the plea

---

But, if the jury decides against you, then you do have an appeal which would be helpful if Mr. Genovese could persuade the Court of Appeals that I had made serious errors.

So, that's sort of an outline of what rights you would be giving up, very important constitutional rights if you plead guilty. Do you understand that description?

          THE DEFENDANT: Yes, Your Honor.

Gov't Ex. B, at 18-19; *see also id.* at 14-18 (describing the nature of the rights Lloyd gave up, including (1) the right to a trial by jury, (2) the need for the government to prove guilt beyond a reasonable doubt at trial, (3) the ability to have counsel cross-examine the government's witnesses and call defense witnesses, (4) the right to testify at trial and the right not to testify, (5) the right to appeal trial and sentencing errors).

[6]     THE COURT: I would like to add a word with respect to the waiver of appeal rights.

The agreement specifies in paragraph nine that if the government appeals from the sentence, the defendant may file a direct appeal of his sentence. Then it goes on to specify that "Even if the government doesn't appeal, the defendant may file an appeal, but claims are limited."

The defendant could appeal if I were to impose a sentence above the statutory maximum, or if I made an error in going upward beyond the sentencing guidelines without any justification, or if I imposed an unreasonable sentence within the meaning of the *Booker* decision.

But, the one other thing I wanted to point out is something that is stated in the plea agreement, but not clearly stated in the government's guilty plea memorandum.

The guilty plea memorandum says that "The defendant has voluntarily and expressly waived any and all rights to appeal or collaterally attack the defendant's conviction sentence, or any other matter relating to this prosecution," and then goes on to refer to the limited rights of appeal that the defendant does have with respect to sentence, the provisions I have already referred to.

But, what the government's plea memorandum does not include is a provision in the plea agreement, which reads as follows: "This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived." Gov't Ex. B, at 32-33.

agreement as presented at the hearing.[7] On that basis, after ensuring that Lloyd still intended to plead guilty, Gov't Ex. B, at 35, I accepted his plea. In so doing, I noted that I was "satisfied that . . . [defendant] knew the rights that [he was] giving up by pleading guilty." *Id.* at 37.

On the basis of the plea colloquy, I remain satisfied that Lloyd understood that he was waiving his right to collaterally challenge his conviction. Further, in accord with Federal Rules of Criminal Procedure, this court – and not the prosecutor – "inform[ed] the defendant of, and determined that the defendant underst[ood] . . . the terms of [the] plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N); *see also United States v. Goodson*, 544 F.3d 529, 540 (3d Cir. 2008) (holding that Rule 11 was violated when "the District Court relied upon the prosecutor's recitation of the terms of the appellate waiver to fulfill its

---

[7] THE COURT: . . . Now, let me turn to you, Mr. Genovese and ask you if subject to what I just said, you think [the prosecutor's] summary of the plea agreement is an accurate one?

        MR. GENOVESE: I do, Your Honor.

        THE COURT: As far as you understand it, Mr. Lloyd, do you too –

        THE DEFENDANT: Yes.

        THE COURT: – think so?

        THE DEFENDANT: Yes, Your Honor.
Gov't Ex. B, at 34.

obligation to inform the defendant of the specifics of the waiver provision"). I therefore conclude that Lloyd's waiver was voluntary and knowing.

It remains to consider whether or not enforcing the waiver would work a miscarriage of justice. While the Third Circuit has declined to give the term "miscarriage of justice" a precise definition, it is "something grave and out of the ordinary." *Mabry*, 536 F.3d at 239. In considering "whether a miscarriage of justice would occur if the waiver were enforced," courts in this circuit consider "'the clarity of the error, its gravity, its character . . . the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" *Id.* at 242-43 (internal quotation marks omitted). When there is no "nonfrivolous" or not "insubstantial" issue raised by the defendant, and especially when there are no such issues "not covered by the waiver," a waiver of appeal and collateral challenge rights is enforceable. *Id.* at 243.

Most of Lloyd's arguments show no circumstances that could rise to a miscarriage of justice. He does, however, argue that he received ineffective assistance of counsel "during a pivotal stage of justice, plea negotiations and sentencing." *See* Mot. at 8. This argument raises the possibility that the alleged inadequate performance of counsel was causally tied to Lloyd's decision to enter into a plea agreement containing a waiver of his collateral challenge rights and therefore has the potential to ground a valid miscarriage of justice claim. *See United States v. Akbar*, 181 F. App'x 283, 286 (3d Cir. 2006) ("[I]t is

7

possible for there to be a miscarriage of justice when "plea proceedings were tainted by ineffective assistance of counsel.") (internal quotation marks omitted); p. 3, *supra*. However, given that (1) Lloyd's submission in support of his § 2255 motion does not argue that "his decision to waive his appellate and collateral attack rights was" actually "tainted by ineffective assistance of counsel," *United States v. Ballard*, No. 03-cr-810-01, 2009 WL 637384, at *8 (E.D. Pa. Mar. 11, 2009), (2) he has proffered no evidence to this effect, and (3) both the terms of the plea agreement, *see* Gov't Ex. A, at 3, and this court's colloquy with defendant at the change of plea hearing, *see* n. 4, *supra*, set out the maximum possible sentence Lloyd could receive, I conclude that the miscarriage of justice exception does not apply here. But because that exception is not well defined, and because it *might* cover the broad category of cases in which the ineffective assistance of counsel is causally tied to the existence of a collateral challenge waiver, I will assume *arguendo* that the waiver is not enforceable and proceed to analyze Lloyd's claims on the merits.

Lloyd's argument that the four-level enhancement under Guidelines § 2K2.1(b)(6) was imposed in violation of *Apprendi* and *Booker* because the facts underlying the enhancement were judicially determined at sentencing cannot succeed on the merits: The Third Circuit has rejected a post-*Booker* challenge to judicial factfinding under precisely the same enhancement. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc); *see also, e.g.*, *United States v. Hicks*, 273 F. App'x 121, 122 (3d Cir. 2008) ("In

fashioning an appropriate sentence, a district court may consider conduct not charged in the indictment nor pleaded to by the defendant."). Further, although it is true "that the facts upon which a judge bases a sentence must have 'sufficient indicia of reliability to support [their] probable accuracy,'" *United States v. Leekins*, 493 F.3d 143, 149 (3d Cir. 2007) (quoting *United States v. Miele*, 989 F.2d 659, 663 (3d Cir. 1993)) (internal quotation marks omitted), this is not an instance in which the facts lacked adequate "indicia of reliability." In particular, a police detective who was assigned to investigate a double murder – an investigation which "led to th[e] investigation of Lloyd being in possession of a firearm" – testified to the contents of nine separate witness interviews conducted by the police in the course of their murder investigation in which the witness-interviewees stated that Lloyd dealt drugs. Sentencing Tr. 13, 42. Five of those witness-interviewees "indicated that they knew the defendant to carry a gun." *Id.* at 42. One of the witness-interviewees – Steven Melice – stated in the course of his interview that, while he was in the house in which the double murder was committed, he saw a "guy that was always there with his gun" and bought "a gram of powder cocaine" from him. *Id.* at 54-55. Melice confirmed that the individual he was describing had a gun with him at the time of this drug purchase. *See id.* at 55-56. When faced with a "photo array of eight similarly featured black males," Melice identified Lloyd as the individual with the gun who sold him cocaine. *Id.* at 56. As corroborated by the other witness-interviewee accounts and by his identification of Lloyd, and in the absence of any contrary evidence,

9

Melice's interview account, though unsworn, was "reliable and probative" and sufficiently reliable to sustain the enhancement. *Leekins*, 493 F.3d at 150 (quoting *United States v. Yeaman*, 194 F.3d 442, 463 (3d Cir. 1999)). Lloyd's *Apprendi-Booker* claim thus fails on its merits.[8]

Nor can Lloyd succeed on his Confrontation Clause claim. "[T]he Confrontation Clause does not apply in the sentencing context and does not prevent the introduction of hearsay testimony at a sentencing hearing." *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007). Moreover, as discussed above, the evidence supporting the four-level enhancement under § 2K2.1(b)(6) was sufficiently reliable to sustain the enhancement.

Further, the argument that Lloyd's counsel was ineffective for failing to advise defendant about the sentencing enhancement is – like the *Apprendi-Booker* claim – foreclosed by Third Circuit precedent. The Court of Appeals has squarely held "that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 298-99 (3d Cir. 2007). Cardinally, in *Shedrick*, the Third Circuit stressed that the district

---

[8] Lloyd further argues that § 2K2.1(b)(6) "is irrelevant and inapplicable to the case at bar." Mot. at 9. In support of this argument, he offers an incorrect version of § 2K2.1(b)(6). At the time of defendant's sentencing, that provision authorized a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K21.(b)(6) (version effective November 1, 2007). That language covers Lloyd's case, in which the testimony at sentencing established that he used or possessed a firearm in connection with a drug transaction.

10

court informed the defendant of "the maximum possible sentence" and the fact "that it retained full discretion over the ultimate sentence." *Id.* at 300. Here, this court informed Lloyd at his change-of-plea hearing that "under the law of Congress which defines this crime, you can be sentenced to a term of imprisonment of as long as ten years." Gov't Ex. B, at 10.[9] Lloyd stated his understanding of this potential sentence, and confirmed that he received no promises not contained in the plea agreement "in exchange for pleading guilty." *Id.* at 10, 35. Because neither party discussed a possible § 2K2.1(b)(6) enhancement at the change-of-plea hearing, I did advise the defendant that the likely Guidelines range was a term of 77 to 96 months in prison and that, "on the basis of the information I [had at the time], I th[ought] that [ten years] would be regarded as an unreasonably high sentence" and that "eight years" was the likely maximum sentence I would impose. *Id.* at 25-26. This was a prediction that did not anticipate the subsequent revelation that Lloyd used the gun that it was unlawful for him to possess in furtherance of a drug felony. I nevertheless did stress that the 77-to-96 month range was "estimate" and that it "ha[d] the power to impose a sentence of as much as ten years." *Id.* On the basis of *Shedrick*, I therefore conclude that defendant's argument is foreclosed on the merits.

---

[9] A statutory maximum penalty is not subject to increase via the imposition of Guidelines enhancements. *See Grier*, 475 F.3d at 565-66 ("None of the facts relevant to enhancements or departures under the Guidelines can increase the maximum punishment to which the defendant is exposed.").

11

Lloyd also argues that his counsel "failed to properly investigate [his] Criminal History." Mot. at 6. It is true that Lloyd's counsel incorrectly predicted at the change-of-plea hearing that defendant would be in criminal history Category IV rather than Category VI. Gov't Ex. B, at 24. At the plea colloquy, however, the government indicated its belief that Lloyd was in Category VI. Accordingly, I informed Lloyd that, assuming that the government's calculation was the correct one, he "would probably be in a sentencing guideline range of between 77 and 96 months." *Id.* at 25.[10] I further stressed that this was simply "the best estimate I can give" and that "I have the power to impose a sentence of as much as ten years." *Id.* By taking these actions, this court cured any deficiency in information imparted to Lloyd by counsel, because Lloyd would be unable to show prejudice as required to maintain an ineffective assistance claim under *Strickland v. Washington*, 466 U.S. 668 (1984).

Insofar as Lloyd's ineffective assistance of counsel claim rests on the notion that his lawyer failed to challenge the § 2K2.1(b)(6) enhancement at the sentencing hearing, the claim fails because counsel's performance was not deficient. Lloyd's lawyer did, in fact, argue to this court that the evidence supporting the enhancement was too unreliable to ground the enhancement. *See* Def.'s Sentencing Mem., at 3-5; Sentencing Tr. at 17-18, 38-42, 51-52. Moreover, although counsel did not advance the *Apprendi-Booker* claim

---

[10] As noted above, even this prediction underestimated the proper guidelines range, because neither party discussed the possibility of a § 2K2.1(b)(6) enhancement at the change-of-plea hearing.

now argued by petitioner, that claim is meritless for the reasons stated above, and the failure to argue a meritless argument does not amount to ineffective assistance of counsel under *Strickland*. *See Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998).

Finally, Lloyd's argument that his lawyer was ineffective for failing to appeal his enhanced sentence does not entitle him to relief. Lloyd's waiver gives him no right to appeal from the imposition of an enhancement – as opposed to an upward departure – under the Guidelines, and counsel is not ineffective for failing to file a waived appeal. *See Mabry*, 536 F.3d at 239-42 (enforcing a waiver against the argument that counsel did not file a waived appeal). For the same reason, counsel was not deficient in failing to inform Lloyd that he could appeal his sentence.

For these reasons, defendant's motion will be denied. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>LEO LLOYD,<br><br>    Defendant. | CRIMINAL ACTION<br><br>No. 07-195 |

**ORDER**

**AND NOW**, this 7th day of June, 2010, upon consideration of defendant's Motion to Vacate, Set Aside, or Correct Sentence (docket no. 35) and the government's response thereto, it is hereby **ORDERED** that defendant's motion is **DENIED**.

BY THE COURT:

/s/Louis H. Pollak
Pollak, J.